He is listening to the arguments from Chambers, and if there is something that he needs to communicate to us, I trust we'll hear from him. But he will participate in the decision and will be fully listening to what you have to say. The first argued case this morning is Quest Licensing Corporation against Bloomberg LP. Mr. Fabricant. Good morning, Your Honors. So we are here on an appeal from the granting of summary judgment of non-infringement by the District Court in Delaware. And the summary judgment decision was based on the claim construction of the District Court with respect to a critical claim term, changing information. Do you agree that if we affirm the construction of changing information and disagree with you that there is a meaningful dispute of fact under the definition that the District Court came up with, that your arguments for other claim limitation terms like mobile telecommunications network are irrelevant? Well, they're irrelevant if, they're not irrelevant to trying to get a reversal of that construction because the patent would still be a valid and enforceable patent. And we certainly would like to correct what we believe is a mistake with respect to the construction of mobile telecommunication network, which we don't believe should have been limited to GSM. So we certainly would like to proceed with obtaining the correct construction. Would they be irrelevant to our decision making on this case? It would be irrelevant to your decision making if you affirm the dismissal of the case based upon the grant of summary judgment. On pages 25 and 26 of the blue brief, you quote the District Court where the judge said, I may well have considered in light of what I've heard today some of your arguments. But because they were presented, quote, on the eve of trial, the court ruled in favor of the appellees. This is commentary from a hearing. What authority do you have that has any evidentiary value at all? It's not certainly dispositive of the issues, Your Honor. I think what was important and the reason we included it in the record is the fact that we believe the judge's critical mistake was that if you look at the exemplary first claim for relief, which everyone agreed in the case was exemplary of the apparatus claims, and then you look at the first two elements, the receiving means for receiving changing information, the construction cannot be right. Because there was no dispute that when the information provider... What's that have to do with my question? Well, I believe when at the oral argument on summary judgment, I believe that Judge Sleet finally understood that and actually came, I believe, to the conclusion that he thought his construction may have been correct. Is that... Is that kind of speculation? I mean, I couldn't... I was a trial judge for 16 years, and I felt free to just blather on the bench and secure the knowledge that that's all it was. Your Honor, this is a de novo review of construction, so it has no meaningful dispositive weight here. And we need to convince this panel that the construction was an error. You asked for a construction of price information has been information. Price information has been updated. How is this any different from the district court's construction of information that has changed? Well, the word only, only is the key to the court's construction, which we believe was an error. By putting in only the way the court then applied his own construction on summary judgment, nothing could accompany the updated data except the price that was changing itself. And if the court looks, if this court looks... Well, on page 34 of the blueprint, you say only the data that has changed for a specific contract will be sent to the subscriber's computer. Isn't that a concession that the term changing information refers to only information that has changed? No, Your Honor, because the information received from the information provider is updated data. It has changed. That's what the information provider provides to the service provider. So that when Standard & Poor's sends on high-speed satellite network, everything that's updated, it has changed. The novelty of this patent, if you look at the seventh element of the first claim, is that only the information of interest to that particular subscriber of the changed information goes to the subscriber. And there are examples, for example, as an express example in the CDM, that if all the NASDAQ information is sent but the subscriber is only interested in five stocks, then the updates for those five stocks and only the updates for those five stocks are sent. That doesn't mean that the price is separated from the symbol, which is part of the data field. Well, the symbol is never updated, is it? The symbol is never updated, but, Your Honor, the data field, the price comes in a data field. It's not price. It's not a number. It's the opening price. It's the closing price. It's the volume. It's the stock symbol. It's the exchange ID. And if Your Honor looks at figure eight, the package that is sent is a data field. And within the data field, there are files. And all of those files, what this judge did was he construed down to the level of only certain files from the price data can go or not go. And that was a mistake. And, Your Honor, when you look at elements one and two of claim one, elements one and two, then immediately you know the construction was wrong because if you apply only data that has changed and it can't include stock symbols, then no information can come down. What's the difference between first receiving means and second receiving means in claim one? There are, Your Honor, in the figure of the patent, there are two paths. This is a dual path. The system is an information provider with two receiving means, a CSP-1 and a CSP-2. The secret of this invention, the novelty, is that all of the real-time data goes through CSP-1 directly to the demand engine server where it looks to see what five stocks Your Honor is interested in in its profile and then sends only the updates that came in from the information provider to the subscriber. The second pathway, which is CSP-2, does something different. The second pathway sends the same information with all the updated and the stock symbol and the exchange code, but it stores all that information in a data data store 55 on the second pathway. And what that's for is that's for the other novelty feature of this invention, which is transient wireless connection. If the subscriber gets disconnected and as soon as he reinitializes, it will go to the data data store on the second path and it will have all of the updated data. So that's the two pathways, CSP-1 and CSP-2. Everything goes through them. So the issue really is, and the appellees can see that the term, changing information, must be applied consistently throughout the claim, throughout the patents and the claims of the patents. If only the data that has changed excludes stock symbols and exchange code, then no information can be received from the information provider. The record is clear that the information provider always sends the packets. And the packet information is set forth in Figure 8, where you can see in Figure 8 what the packets look like. And they contain all of the different types of packet information relative to price, including the symbol and the exchange code. So if the subscriber then says, oh, and by the way, I'm also interested in this sixth stock, and then the system in the exchange searches its database and sends the information on the sixth stock, where would that fit in your claims? The subscriber communicates with the demand engine server, which is on that CSP-1 path, the top path, and sends the information, here is another stock that I would like information on. And then that pulls from the data store, which is in the second path, all of the updated data which has been received and sends only the information which the subscriber is interested in to the subscriber. Now, I think where the district court got hung up on the conservation of bandwidth, well, this does tremendously conserve bandwidth, because we're talking about every stock from every exchange being updated and coming into the CSPs. Everything. But only 5 or 10 or 15 stocks or whatever it is the subscriber wants to see that gets delivered by mobile. There's been enormous changes in bandwidth and capabilities since the application filing date. But it would seem in order to avoid some of the obvious concerns under Section 101 and everything else, I just get stock information from the cloud that you need. The restrictions that were present when this application was filed. Well, Your Honor, there have been improvements in bandwidth in mobile telecommunications. There's no question about that. But there have also been tremendous increases in the volume of the content delivered. I mean, think about movies coming down and huge packages of data. So while mobile speeds have come up, the reason you often can't get very good downloads is because even today, even with 4G, it's still slow compared to a dedicated network. Something very important else I'd like the court to understand. When the information provider sends these updated information to the service provider, that's Bloomberg or Schwab, the information provider doesn't know or care what they're going to do with the information. They don't know if they're going to send it over mobile. They don't know whether it's going to be sent by dedicated high-speed T1 connection to traders. They don't know. It all comes in. It all updates. And then this invention discloses that. You say this invention. What is the invention here? The invention is twofold. It is being able to tell the demand engine server what it is that the subscriber wants to see and only what the subscriber wants to see and only receiving delivery of that constantly updating information to those stocks in the profile. And it's also being able to, at an instant, restock the entire profile with updated information in the event that there's a disconnection of the mobile device. So that's novel? We do think it's novel, yes. And we believe that, you know, obviously the CBM, the proceeding in the patent office, the PTAB, denied the petition on CBM. And we do think it's novel. In fact, we don't think there's a strong prior on it whatsoever. This is a very early priority date. And at the time— Is there a correlation to CBM in this case? I'm sorry? You're using an example of CBM for what purpose? No, the defendants brought a CBM petition. Yes. And it was denied. And the institution of the CBM was denied. So, you know, the arguments were made to the court, to the PTAB, and we think it is a novel invention. The combination of the dual pathway is what the PTAB expressly found novel. Before the district court, Quest said, I'm quoting, the specification describes a step for parsing the data packet to isolate only the stock price, which was identified as the changing information. And you distinguish that from information that doesn't change since the date of George Washington's inauguration. So where's all that other information that you were telling me about, five different types? Is it just stock price? Well, no, because the stock price, if you look at it, figure eight, is in a data field, and the data field is not just a price. It's all of the information in there. And there's no teaching or disclosure in this patent about just sending a number. What I believe the counsel was referring to at that time is there was a difference that he was arguing between something that could not possibly change, like the birth date of a president, could not ever change, and other types of information that does not frequently change, but could change, like a stock price, like an exchange, like a company name. I think that's the point that counsel was making at that time. Thank you. Yes, may it please the Court, Ed Poplowski for Appellees. Changing information or changing data is an explicit requirement of each of the asserted claims in this case. The district court correctly construed that explicit requirement to mean only data that has changed. If you get a few numbers, 132 and a half or whatever, unless you know what stock it is, it's meaningless. Isn't there some sort of implication that it has to be identified with whatever the subscriber has stated is his interest? Yes, Your Honor, let me explain how it's identified with the subscriber. The first thing that happens here in the description in the patent is that the information for the subscriber has to be initialized. And so a storage filter or profile, which is number 14 in figure 3 in the patent, is populated. And so, for example, that can be populated with whatever stocks the subscriber has in mind. Once that store is populated, then thereafter there is a feed that comes in, in this case in the patent, CSP1 or CSP2 of information from, say, Standard & Poor's. That information, according to the patent post-initialization, is only data that has changed. And then what happens, that changed data goes through a process whereby there's a parser, and this is in figure 3 in the patent, and that parser extracts price data. That's discussed in figure 15A of the patent, which feeds into S19 in figure 14. That extracted price data is then connected through a specific subscriber thread that is associated with the changed data for those stocks. That is described in figure 14 and also in figure 17, Your Honor. Once that connection is made by the system, then it is known what changed data, in this case changed prices, go with specific stocks for that subscriber. The patent then describes, figure 14 and figure 17, how that changed data and only that changed data, Your Honor, then goes along a thread to the subscriber. This is discussed in great detail, commencing at about column 12 in the patent, line 12, through column 13, line 30. And there it's explained that after the price data is extracted, and after it is associated with a specific thread associated with a given subscriber, that changed price data is sent along that thread to the subscriber. You have to say what the price refers to. Wouldn't it be understood? They say you only transmit the changed price data. It's understood, Your Honor. AT&T said you have to put it into the GS. Or else it's just the one that's in the group. AT&T, Your Honor, for that matter. AT&T is already sitting there. Yes, Your Honor. It's already sitting in store filter 14. Store filter 14 in Fig. 3 of the patent is populated for each given subscriber on a selective basis with all the data that that subscriber is interested in. So let's suppose, Your Honor, I'm a subscriber and I like six stocks and I want to work with Bloomberg, a service provider, or somebody else. So the already populated AT&T doesn't change. Correct. Nor does the GE already populated. Correct, Your Honor. What changes is the two numbers related to the price. The two numbers get changed because when they're parsed out, they're sent into the store for that subscriber. And then there's a specific thread associated with that. This is right out of Fig. 17, Your Honor, feeding into Fig. 14. And then once you connect to that thread, it knows the dedicated price changes for those particular stocks that are sent on to the subscriber. And, Your Honor, let me just emphasize another point, if I may. This precise embodiment, which is set forth in the asserted claims, is described in the patent. It's talked about in Column 2 in the specification commencing at around line 43, going on to, I'm sorry, Column 1 commencing at around line 43 and going on to Column 2 at around line 43. And then that description, and in those columns, it talks about how it's only the data that's changed that's supplied to the subscriber. And then if you go on through Columns 12 and 13 of the patent, it's clear that coming into the service provider system, whether through CSP1 or CSP... That's easy, I'll direct you. It's easy if you only have one stock, if the subscriber is only interested in one stock. Suppose he's interested in five stocks, and at least some of them are around the $100 range or whatever. How is the subscriber going to know which of his interests is affected by this communication of a transaction that's taking place on the Singapore Stock Exchange? The subscriber will access the service provider's database. The service provider's database will have a store filter, in this case 14 in the patent, which already is populated with all of the stocks that the subscriber wants to watch, 10, 20, 50, 100. That's the information that was initialized, and the subscriber can reinitialize it if he or she wants to. Once that's established, then what comes into the system is only changed data, in this case, for example, only price data. And the patent in column 12 and 13 describes how... Does it show an historical price as well? That is, it's changed from what it's changed? That's not clear in the patent, Your Honor. The one thing that is clear is that only the changed data is... And the patent describes why in column 13 in context with the specific example, specifically in order to overcome the bandwidth problem on the GSM network. Is this the only objection that you raise to this patent? It's conceded no problem with section 102 or 103 or 101 or anything else. 101 was the subject of a CBMR petition. As to 102 and 103, those were issues before the district court. Since we got summary judgment of non-infringement, those issues are not before us today. Your Honor, can I turn to this... Well, let me ask you a question. Can you cite us to a case that says that the prosecution history considered during claim construction includes statements made during prosecution of a child application? I believe, Your Honor, the Teva case, for example, talks about how statements made during prosecution history and related applications can be considered by the court. And in this instance, Your Honor, in both the 112-related application and the 357 application, both of those have the same specification. They distinguish between changing and non-changing information. So, for example, in the 112-related application... But it says related. Does it refer to a child patent? Yeah, there was priority claimed, Your Honor, same specification. So if I may, for example, Your Honor, on appeal in challenging the rejection of the 112-related application, Quest told the PTAB, in order to distinguish over the Zussman Prior Art Reference, and this is at 3037, 3040, 3061, and 3062, Quest said, split the incoming stock information into non-changing data, like the stock symbol, and changing data, such as the stock price, unquote. Another quote. The non-changing data only has to be communicated once, unquote. Your Honor, this is precisely how I explain the invention to the court. The subscriber initializes. You populate the storage filter 14 with the data of interest to the subscriber. Once that's done, only changed data comes into the system. It's parsed. That parsed changed price data is then hooked up by dedicated threads, which give the subscriber the changed price data that it wants for that stock, and then it's passed along that thread to the subscriber. Do you agree or disagree with Mr. Fabrikant's explanation of differences between first-receiving means and second-receiving? In essence, yes, Your Honor, but let me be very clear about this. Wait, wait, wait. I said, do you agree or disagree? And your answer is, in essence, yes. Let me just finesse it a tad, if I may, Your Honor. The CSP2, which is in FIG2, that's the changed data that goes into the main database and then into the filter. The CSP1 goes straight across into the demand engine, which is FIG3. That demand engine has another parser in it. That's the one that extracts the changed price data, and that's where I talked about how that's then linked up with the appropriate thread. This is Column 12-13, Patent. Your Honor, if I just may quickly turn to Quest's proposed new construction, updated information. First of all, Your Honor, this is a change in scope. It's a departure from what Quest told the district court, all the way up to the summary judgment hearing, where it was telling the court that they weren't asking for a change in construction. Under Quest's construction, updated information would, in fact, include, for example, non-changing information like the stock symbol. So it would be complete rewriting of construction. We think it's completely contrary to the specification and to what Quest told the district court and the PTAB in related applications. Does the court have any other questions? Thank you. Your Honor, in FIG2, I think this is very important, he focused his argument exclusively on what happens downstream from CSP1 and CSP2. Those are the receiving means. The receiving means have to receive changing information. He made a long argument, which we don't agree with, and our briefs explain why, about where the extraction takes place. It doesn't take place. There is no compare of updating and changing information, just to take out the updated price in CSP1. That parser only looks to see whether it's a stock that the subscriber is interested in. He's conflated track number one, CSP2, one with what CSP2 is. Your use of the pronoun, you mean you're on or off those encounters? Yes. Your Honor, the important thing is, at the dotted line on FIG2, what is received, before we even look at the rest of the specification, what's received has to be changing information. Therefore, what's received has to be changing information that has stock symbol exchange code. Stop right there, and then we know that the claim of construction can't be wrong. With respect to the child application, I would just add, these were different claims. Even a different claim term. The claim term in the child applications is continuously changing information, and the added claims were directed at the cell phone or the portable computer, the subscriber's device, asking the demand engine server, first to send non-changing data, and then to send changing data. And if the court looks in the record at the dependent claims, which were in the application, the dependent claims specifically asked the demand engine changer to update the non-changing data from time to time when appropriate. It's a different invention. They're different claim term, continuously changing, not changing, and it doesn't have the first and second receiving means at all. Nor does it have this limitation of the first and second receiving means having changing information. So it's a different invention. Any more questions? Thank you. Thank you very much.